No. 20,182.

ELLEN McCRACKEN, *Appellee,* v. THE MISSOURI VALLEY BRIDGE & IRON COMPANY, *Appellant.*

Appeal from Barton district court; DANIEL A. BANTA, judge. Opinion modifying former opinion of dismissal filed December 11, 1915. (For original opinion see *ante,* p. 353, 150 Pac. 832.)

*R. A. Campbell,* of Hutchinson, for the appellant.

*F. V. Russell,* and *R. C. Russell,* both of Great Bend, for the appellee.

*Charles A. Baker,* of Chicago, Ill., for The Fidelity & Casualty Company of New York.

OPINION MODIFYING FORMER OPINION.

The opinion of the court was delivered by

BURCH, J.: Ellen McCracken commenced an action against the Missouri Valley Bridge & Iron Company for compensation for the death of her son who was an employee of the bridge company. The district court made an award of compensation in a lump sum computed according to the terms of the workmen's compensation act. At the instance of the Fidelity & Casualty Company of New York, which had insured the bridge company, a baseless and contumacious appeal was taken to this court. The appeal was dismissed for want of merit, and in the opinion of the court occasion was taken to comment on the practice of taking such appeals. After the opinion was filed the Fidelity & Casualty Company of New York filed a motion asking that it be relieved from censure on the ground that it was in fact willing to abide the judgment of the district court but that it was coerced by the insurance department of the state of New York to resist the claim of the aged, destitute and helpless plaintiff. Leave to make a showing was granted.

(*McCracken v. Bridge Co.*, ante, p. 353, 360, 150 Pac. 832, 834.) The showing has been made and it clearly discloses that the Fidelity & Casualty Company was not actuated by any desire to delay payment, to speculate upon the plaintiff's misfortunes, or to abuse judicial procedure, in this case. Anything to the contrary contained in the former opinion may be considered as withdrawn.

While the court is pleased to make the foregoing statement it regrets the necessity of adverting to the proof which the Fidelity & Casualty Company has brought upon the record explaining why it acted against its own wishes. As a part of its showing the Fidelity & Casualty Company filed the affidavit of one James J. Hoey, the material portions of which read as follows:

"James J. Hoey, being first duly sworn, upon his oath deposes:

"That at all times hereinafter mentioned, he was second deputy superintendent of insurance of the state of New York. That the principal office of the department of insurance of the state of New York is located at the capital of said state, to wit, Albany, but that affiant's office was located at the city of New York. That affiant, by virtue of the office as such second deputy superintendent of insurance, was charged with the supervision of insurance companies writing workmen's compensation insurance within the state of New York, and among others, with the supervision of The Fidelity & Casualty Company of New York.

"That the said The Fidelity & Casualty Company of New York as a condition precedent to its doing business in the state of New York was required by the department of insurance of the state of New York to promise and undertake not to make lump sum settlements in cases arising under the workmen's compensation statutes of the various states in which The Fidelity & Casualty Company of New York might transact business, without the approval of the department of insurance of the state of New York. That the said pledge was at all times hereinafter mentioned in full force, and that the said department of insurance of the state of New York insisted that no lump sum settlements in cases arising under workmen's compensation acts of the various states should be made without its approval.

"That upon to wit the 30th day of April, 1915, Frank E. Law, Esq., vice-president of The Fidelity & Casualty Company of New York, came to the office of affiant, and asked permission of affiant as representing the Department of Insurance of the State of New York, to make a lump sum settlement of the liability of The Fidelity & Casualty Company of New York in this case. That the said Frank E. Law laid before affiant among other papers a certain letter from the Missouri Valley Bridge & Iron Company to the Chicago office of The Fidelity & Casualty Company of New York, in which letter the Missouri Valley Bridge and Iron Com-

pany urged that The Fidelity & Casualty Company of New York make a lump sum settlement in this case. That affiant stated to Mr. Law that he did not believe that the facts of the case warranted any change in the prior rulings of the Department of Insurance of the State of New York, and that the Department of Insurance of the State of New York would expect The Fidelity & Casualty Company of New York not to make a lump sum settlement in the case, but to resist the same to the utmost."

The workmen's compensation act is a statute of the state of Kansas, duly promulgated by its legislature for the purpose of ameliorating certain social conditions. With the wisdom or unwisdom of the statute this court has nothing to do. The legislature, however, provided that in actions for the recovery of compensation the judgment, if in favor of the plaintiff, "shall be for a lump sum equal to the amount of the payments then due and prospectively due under this act, with interest on the payments overdue." To this legislative command was added the following: "or, in the discretion of the trial judge, for periodical payments as in an award." (Laws 1911, ch. 218, § 36.) That is the law of this state, and so long as it stands on the statute book it is entitled to obedience from anyone who encounters it.

It sometimes occurs that a statute of a state is displeasing to a portion of its citizenship and to others beyond its borders. It is, however, a fundamental principle of the American system of government that when the legislature of a state has registered a decision upon a subject within the scope of its authority the decision is the will of the state to the support of which all moral forces should rally. Those who are dissatisfied may indeed continue to persuade, if they can, successive legislatures to change the law, but so long as the legislation stands public and private welfare demand obedience to it until it can be changed according to lawful methods, because the supremacy of the law is the indispensable condition of any peace, order, or justice whatever.

Upon its own showing The Fidelity & Casualty Company of New York comes into this state to transact its business under an obligation to abide, not the will of the state vesting in its district courts authority to say when lump sums shall be paid in compensation cases, but the will of a department deputy of another state. On April 30, 1915, before the district court

of Barton county had an opportunity to examine the facts and to exercise its authority to determine whether or not Ellen McCracken ought to receive a lump sum or periodic payments as compensation for the killing of her son, the deputy issued his fiat to resist a lump sum judgment "to the utmost." The case was one which both the bridge company and The Fidelity & Casualty Company desired to settle by paying a lump sum. The facts were stated in the former opinion as follows:

"The son is dead. The mother was entirely dependent upon his earnings for her own continued existence independent of charity. She is utterly destitute. She has no income or sources of income of her own. She is physically unable to earn her own living; and she is sixty-two years old. The statute gave her $1872. With this sum she must establish herself according to her helplessness and then employ the remainder so that it may last to the end of her days, for she will never have any more. It does not take a financier to understand how little she has, nor a sentimentalist to appreciate her needs." (Ante, p. 357.)

The judgment of the district court was that compensation should be made in a lump sum. There was no ground for appeal. Because The Fidelity & Casualty Company of New York was under obligation to submit to something which it accepted as higher law than the statute and rules of procedure of this state, it proceeded to resist to the utmost, and required an appeal to be taken which lacked even the shadow of merit. The result was not a lawsuit, but, as the court indicated before, a demoralizing abuse of the judicial machinery of the state perpetrated in disrespect of its laws and in an effort to thwart the purpose of the legislature expressed in a social-welfare statute. As the former opinion stated, the court does not possess adequate means of dealing with this kind of lawlessness, the real culprit not being in court nor subject to process.

Such being the situation disclosed by the showing made in support of the application to modify the former opinion, the closing words of that opinion are pertinent:

"Some disagreeable facts, . . . have been set down . . . plainly and in detail, which not only disclose a condition, but which ought to awaken some interest in some quarters." (Ante, p. 359.)